1

2

3

4

5

6

7

**FILED**
CLERK, U.S. DISTRICT COURT

2/25/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ JB _____ DEPUTY

8

UNITED STATES DISTRICT COURT

9

FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

June 2021 Grand Jury

11

UNITED STATES OF AMERICA,

CR  2:22-cr-00057-FMO

12

        Plaintiff,

I N D I C T M E N T

13

        v.

[18 U.S.C. § 371: Conspiracy; 18
U.S.C. § 545: Smuggling Goods into
the United States; 16 U.S.C.
§§ 3372(a)(1), 3373(d)(1)(B):
Wildlife Trafficking; 18 U.S.C.
§§ 981(a)(1)(C), 982(a)(2)(B), 28
U.S.C. § 2461(c), and 16 U.S.C.
§ 3374(a)(1): Criminal Forfeiture]

14

JOSE MANUEL PEREZ,
  aka "Julio Rodriguez," and
STEPHANY PEREZ,

15

16

        Defendants.

17

18

    The Grand Jury charges:

19

INTRODUCTORY ALLEGATIONS

20

    At times relevant to this Indictment:

21

A.    THE DEFENDANTS AND CO-CONSPIRATORS

22

    1.    Defendant JOSE MANUEL PEREZ, also known as "Julio

23

Rodriguez" ("JOSE PEREZ"), was a resident of Missouri and then

24

Oxnard, California, who was in the business of buying and selling

25

reptiles and amphibians, including protected and endangered species

26

of each.

27

28

2.   Defendant STEPHANY PEREZ was defendant JOSE PEREZ's sister and also a resident of Oxnard, California.  She assisted defendant JOSE PEREZ in carrying out the illicit trade in smuggled wildlife.

3.   Co-conspirator #1 was a Mexican national residing in Mexico.  Co-conspirator #1 was in the business of selling protected and endangered wildlife to customers in the United States and elsewhere.  Co-conspirator #1 used social media to advertise live animals for sale, negotiate a price for the animals, and arrange with co-conspirators for the transport of the purchased animals to Juarez, Mexico, and then to the United States for delivery to customers, including the defendants.

4.   Co-conspirator #2 was a United States resident residing in El Paso, Texas, working with the defendants and Co-conspirator #1 as a middleman to smuggle protected and endangered wildlife from Mexico to the United States.  After Co-conspirator #1 transported animals to Juarez, Co-conspirator #2 retrieved the animals in Juarez, drove them into the United States in his car, and then shipped them to the buyers.

5.   Co-conspirator #3 was a Mexican national residing in Juarez, Mexico, working as a middleman with the defendants and Co-conspirators #1 and #2 to smuggle protected and endangered wildlife from Mexico to the United States.  Co-conspirator #3 retrieved the wildlife delivered to Juarez, Mexico, and delivered it to Co-conspirator #2 at a pre-determined location on the Mexican side of the United States border.

6.   Co-conspirator #4 was a United States resident residing in Indiana and Florida, who purchased smuggled wildlife from the co-

conspirators, and who assisted the co-conspirators in selling smuggled wildlife.

7.   Co-conspirator #5 was defendant JOSE PEREZ's girlfriend and also a resident of Oxnard, California.  Like defendant STEPHANY PEREZ, Co-conspirator #5 assisted defendant JOSE PEREZ in carrying out the illicit trade in smuggled wildlife.

B.   BACKGROUND ON THE REGULATION OF TRADE IN ENDANGERED SPECIES

8.   The Convention on International Trade in Endangered Species of Wild Flora and Fauna ("CITES") was an international agreement among approximately 183 governments, including the United States and Mexico, to protect fish, wildlife, and plants that are, or may become, threatened with extinction.  CITES established import and export restrictions to protect these species from overexploitation through international trade.

9.   Under CITES, species are protected according to a classification system known as "appendices."  International trade in species listed in these appendices is monitored and regulated by permits and quotas.  The permit restrictions apply to live and dead specimens, as well as the skins, parts, and products made in whole or in part from a listed species.

10.   Wildlife and plant species listed in Appendix I of CITES are threatened with extinction.  Those listed in Appendix II of CITES include species that are not presently threatened with extinction but may become so if their trade is not regulated.  Appendix II species may be allowed in trade; however, they are strictly regulated and monitored.  To import an Appendix II species into the United States, the exporter must obtain a valid "foreign export permit," issued by the specimen's country of origin, prior to importation.  Appendix III

of CITES includes wildlife and plant species listed by CITES member countries as being in need of international trade controls to prevent unsustainable or illegal exploitation of the species.  International trade in such species is allowed only on presentation of the appropriate permits or certificates.

11.  In the United States, CITES is implemented through the Endangered Species Act ("ESA").  *See* 16 U.S.C. §§ 1537a, 1538(c). The U.S. Fish and Wildlife Service ("USFWS") is authorized to issue, and has issued, regulations under the ESA incorporating the specific permit requirements and provisions of CITES.  16 U.S.C. § 1540(f); 50 C.F.R. Part 23.  The ESA and its implementing regulations make it unlawful for anyone to engage in trade in any specimens contrary to CITES or to possess any specimens traded contrary to CITES.  16 U.S.C. § 1538(c)(1); 50 C.F.R § 23.13(a) and (c).  "Trade" includes importation into the United States.  50 C.F.R. § 23.5.

12.  All wildlife imported into the United States must be declared to the USFWS.  A true and complete declaration Form 3-177, Declaration for Importation or Exportation of Fish or Wildlife, must be filed at or before the time of importation.  16 U.S.C. § 1538(e); 50 C.F.R. § 14.61.  Federal regulations also require that the USFWS clear all wildlife imported into the United States, and that the importer or his agent make available the wildlife being imported to the officer, as well as all required permits, licenses, or other documents.  50 C.F.R. § 14.52.  The wildlife may only be cleared at certain ports authorized in the regulations, unless specifically authorized elsewhere.  50 C.F.R. § 14.11.

13.  The federal wildlife protection statute known as the Lacey Act is found at Title 16, United States Code, Section 3371 *et seq.*

4

The Lacey Act makes it unlawful for any person to import, export, sell, receive, acquire, or purchase any fish or wildlife or plant taken, possessed, transported, or sold in violation of any law, treaty, or regulation of the United States.  16 U.S.C. § 3372(a)(1).

14.  *Abronia* is a genus of lizards found in Mexico and throughout Central America and northeastern South America.  Almost the entire genus is listed in CITES Appendix II, including *Abronia graminea*.  Five species, including *Abronia fimbriata*, are listed in CITES Appendix I.

15.  *Terrapene nelsoni* (spotted box turtle), *Terrapene carolina mexicana* (Mexican box turtle), and *Terrapene carolina yucatana* (Yucatan box turtle) are endemic to Mexico and listed in CITES Appendix II.

16.  *Heloderma horridum* (Mexican beaded lizards) are found in Mexico and are listed in CITES Appendix II.

17.  All Crocodiles (*Crocodillus*) throughout the world are listed in CITES Appendix II.

18.  *Platysternon megacephalum* (Big Headed turtles) are found in Asia and are listed in CITES Appendix I.

19.  *Sacalia quadriocellata* (four-eyed turtles), *Carettochelys insculpta* (Fly River turtles), and *Geoemyda spengleri* (Black Breasted Hill turtles) are found in Asia and are listed in CITES Appendix II.

20.  *Mauremys reevesii* (Reeves turtles) are found in Asia and are listed in CITES Appendix III.

21.  These Introductory Allegations are hereby re-alleged and incorporated by reference into each and every count of this Indictment.

COUNT ONE

[18 U.S.C. § 371]

[ALL DEFENDANTS]

A.   OBJECTS OF THE CONSPIRACY

Beginning on a date unknown to the Grand Jury, but no later than January 2016, and continuing through at least June 2021, in Ventura County, within the Central District of California, and elsewhere, defendants JOSE PEREZ and STEPHANY PEREZ, together with others known and unknown to the Grand Jury, including Co-conspirators #1, #2, #3, #4, and #5, conspired to:

1.   Fraudulently and knowingly import and bring into the United States merchandise, namely wildlife, including CITES-protected wildlife, contrary to laws and regulations of the United States, and receive, conceal, buy, sell, and in any manner facilitate the transportation, concealment, and sale of such merchandise after importation, knowing the same to have been imported and brought into the United States contrary to laws and regulations of the United States, in violation of Title 18, United States Code, Section 545.

2.   Knowingly engage in conduct that involved the sale and purchase of, the offer of sale and purchase of, and the intent to sell and purchase wildlife with a market value of more than $350, and import, export, transport, sell, receive, acquire, and purchase wildlife, knowing that such wildlife was transported, that is imported and exported, in violation of laws, treaties, and regulations of the United States, in violation of Title 16, United States Code, Sections 3372(a)(1) and 3373(d)(1)(B).

3.   Defraud the United States or one or more of its agencies or departments of and concerning its lawful governmental functions and

1   rights, that is, impede, impair, obstruct, and defeat, by deceitful
2   and dishonest means, the lawful and legitimate functions of the USFWS
3   and United States Customs and Border Protection in investigating and
4   enforcing federal laws and regulations related to wildlife
5   trafficking, international trade, and border management, in violation
6   of Title 18, United States Code, Section 371.

7   B.   <u>MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE</u>
8        <u>ACCOMPLISHED</u>

9        The objects of the conspiracy were to be accomplished, in
10   substance, as follows:

11       1.   Defendant JOSE PEREZ and his co-conspirators would use
12   social media to purchase wildlife and to negotiate the terms of the
13   sale and delivery of said wildlife in the United States without
14   obtaining the requisite CITES permits and without declaring any
15   wildlife imported into the United States.

16       2.   Defendant JOSE PEREZ and Co-conspirator #1 would agree to a
17   sale of wildlife, and then Co-conspirator #1 would arrange for the
18   wildlife to be transported from locations within Mexico to Juarez,
19   Mexico.

20       3.   Co-conspirator #3 would retrieve from the Juarez airport
21   the wildlife that defendant JOSE PEREZ purchased from Co-conspirator
22   #1 and then deliver the wildlife to Co-conspirator #2 at a
23   prearranged place in Juarez, Mexico.

24       4.   Defendant JOSE PEREZ and Co-conspirator #3 would provide
25   shipping labels to Co-conspirator #2, bearing addresses in the United
26   States, including defendant JOSE PEREZ's address, to which Co-
27   conspirator #2 arranged for the wildlife to be delivered.

28

5.    Co-conspirator #2 would transport the wildlife in his car from Juarez, Mexico, to his residence in El Paso, Texas, without obtaining the requisite CITES permits, without declaring the wildlife to U.S. authorities, and without transporting the wildlife through a designated port of entry.

6.    Defendant JOSE PEREZ, along with others who purchased wildlife from Co-conspirator #1, would pay Co-conspirator #2 a "crossing fee" for each border crossing, the amount of which depended on the number of animals transported, the size of the package(s), and the risk of being detected by the authorities.

7.    After transporting the animals into the United States, Co-conspirator #2 would ship the live animals to defendant JOSE PEREZ in Missouri and, later, California.

8.    Defendant JOSE PEREZ would import wildlife smuggled from Hong Kong into the United States, without declaring the wildlife to U.S. authorities, and without the requisite CITES permits, for the purpose of selling the wildlife to customers in the United States.

9.    For some of the wildlife that had been smuggled into the United States, defendant JOSE PEREZ would export the wildlife to customers in other countries without declaring the wildlife to U.S. authorities, and without the requisite CITES permits.

10.   Defendant STEPHANY PEREZ and Co-conspirators #4 and #5 would assist defendant JOSE PEREZ in the purchase and sale of smuggled wildlife by receiving, transporting, acquiring, and shipping animals, as well as arranging payment for animals purchased and receiving payment for animals sold, including when defendant JOSE PEREZ was incarcerated between on or about August 25, 2016, and April

9, 2018, and between on or about November 4, 2018, and October 23, 2019.

11.   Defendant STEPHANY PEREZ and Co-conspirator #5 would use electronic payment application accounts that they controlled, including defendant STEPHANY PEREZ's PayPal account and Co-conspirator #5's Venmo account, to pay for wildlife purchased and receive money for wildlife sold by defendant JOSE PEREZ.

12.   Defendant JOSE PEREZ and Co-conspirator #5 would travel from California to Mexico to acquire additional live animals that had been taken from the wild so that the animals could be transported into the United States, without obtaining the requisite CITES permits, without declaring the wildlife to U.S. authorities, and without transporting the wildlife through a designated port of entry.

13.   Defendants JOSE PEREZ and STEPHANY PEREZ, and Co-conspirator #5 would advertise for sale on social media the animals smuggled and intended to be smuggled from Mexico into the United States, posting photos and video that depicted the animals being collected from the wild.

14.   Defendants JOSE PEREZ and STEPHANY PEREZ, and Co-conspirator #5 would cause the illegal importation of wildlife, specifically, more than 1,700 animals, into the United States with a total market value exceeding $739,000.

15.   Defendant JOSE PEREZ would use an alias, "Julio Rodriguez," in order to conceal his participation in the unlawful scheme.

16.   Defendant STEPHANY PEREZ and Co-conspirator #5 would refer to defendant JOSE PEREZ as "Julio Rodriguez" in their business dealings, even though they knew the true name of their brother and

boyfriend, respectively, was defendant JOSE PEREZ, in order to conceal his role in the unlawful scheme.

C.    OVERT ACTS

On or about the following dates, in furtherance of the conspiracy and to accomplish the objects of the conspiracy, defendants JOSE PEREZ and STEPHANY PEREZ, and others known and unknown to the Grand Jury, including Co-conspirators #1, #2, #3, #4, and #5, committed various overt acts within the Central District of California and elsewhere, including, but not limited to, the following:

Overt Act No. 1:   On or about January 14, 2016, Co-conspirator #2 electronically messaged defendant JOSE PEREZ regarding a sale of lizards and turtles, writing, "For abronias [lizards], the crossing is $110, so for tomorrow's shipping, we are talking $320, total."

Overt Act No. 2:   On or about January 14, 2016, defendant JOSE PEREZ responded to Co-conspirator #2, writing, "Really, I don't understand why the turtles shipping is 150.  I thought I already paid 550 for the crossing plus the actual shipping."

Overt Act No. 3:   On or about January 14, 2016, Co-conspirator #2 responded to defendant JOSE PEREZ, writing, "No, to cross the tres lomos [turtles] was quite an ordeal and then I was not expecting those 12 chopos [turtles]. I had to make 3 trips. The box is quite heavy and, on top of that, those chopos bite hard. I had to improvise yesterday with all the animals. Those 2 tres lomos are big and heavy, so let's play by the rules. I really risk a lot by crossing things. Yesterday, it was pretty scary with those 2 monsters."

1       Overt Act No. 4:   On or about January 14, 2016, defendant JOSE
2   PEREZ caused a MoneyGram payment in the amount of $550 for smuggled
3   wildlife to be sent to Co-conspirator #2.

4       Overt Act No. 5:   On or about January 15, 2016, defendant JOSE
5   PEREZ caused a MoneyGram payment in the amount of $320 for smuggled
6   wildlife to be sent to Co-conspirator #2.

7       Overt Act No. 6:   On or about January 25, 2016, defendant JOSE
8   PEREZ and Co-conspirator #2 electronically messaged each other about
9   the transportation of turtles and monitor lizards from Juarez,
10  Mexico, into the United States.

11      Overt Act No. 7:   On or about January 25, 2016, Co-conspirator
12  #2 transported the turtles from Mexico into the United States.

13      Overt Act No. 8:   On or about January 25, 2016, Co-conspirator
14  #2 shipped the turtles from Texas to an address in Missouri for
15  defendant JOSE PEREZ, using a shipping label that defendant JOSE
16  PEREZ had provided to Co-conspirator #2.

17      Overt Act No. 9:   On or about August 1, 2016, defendant JOSE
18  PEREZ electronically messaged Co-conspirator #2 regarding the
19  transportation of turtles and baby crocodiles, to be picked up from
20  Juarez, Mexico, and transported into the United States by Co-
21  conspirator #2, writing, "Amigo, tomorrow 2:00?"

22      Overt Act No. 10:   On or about August 1, 2016, defendant
23  STEPHANY PEREZ electronically transferred $400 to Co-conspirator #2,
24  which was the crossing fee for the transportation of turtles and baby
25  crocodiles from Mexico into the United States and for the subsequent
26  shipping of said wildlife to defendant JOSE PEREZ.

27

28

<u>Overt Act No. 11:</u>   On or about August 2, 2016, Co-conspirator #2 responded to defendant JOSE PEREZ, writing, "Yes. Please make sure [Co-conspirator #3] is on time."

<u>Overt Act No. 12:</u>   On or about August 2, 2016, defendant JOSE PEREZ responded to Co-conspirator #2, writing, "Will do amigo.  I'll make the shipping label right now.  It's 4 box turtles they are a different species *Nelsoni* not bulky like the other ones and not as heavy."

<u>Overt Act No. 13:</u>   On or about August 2, 2016, Co-conspirator #2 responded to defendant JOSE PEREZ regarding the crossing fee, writing, "$500."

<u>Overt Act No. 14:</u>   On or about August 2, 2016, defendant JOSE PEREZ responded to Co-conspirator #2, writing, "Can we do 400 amigo? I will have 2 more similar trips this week also."

<u>Overt Act No. 15:</u>   On or about August 2, 2016, Co-conspirator #2 responded to defendant JOSE PEREZ, writing, "Turtles are always high risk.  Ok, $400.00."

<u>Overt Act No. 16:</u>   On or about August 2, 2016, defendant JOSE PEREZ responded to Co-conspirator #2, writing, "Just told Me [my] sister to send [money].  Label [shipping] sent as well."

<u>Overt Act No. 17:</u>   On or about August 2, 2016, Co-conspirator #2 responded to defendant JOSE PEREZ, writing, "I am back, but I had a really close call today.  I was stopped and searched by the US Customs.  Thank God they found nothing."

<u>Overt Act No. 18:</u>   On or about August 2, 2016, defendant JOSE PEREZ responded to Co-conspirator #2, writing, "Wow thank god."

<u>Overt Act No. 19:</u>   On or about August 2, 2016, Co-conspirator #2 responded to defendant JOSE PEREZ, writing, "That is why I always

tell you turtles are risky.  They are bulky.  I got nervous today, but I kept my cool."

Overt Act No. 20:   On or about August 2, 2016, defendant JOSE PEREZ responded to Co-conspirator #2, writing, "I'll try and keep it to smaller stuff from now on."

Overt Act No. 21:   On or about August 2, 2016, Co-conspirator #2 shipped, via UPS, the turtles and other wildlife from El Paso, Texas, to defendant JOSE PEREZ in Missouri using a shipping label that defendant JOSE PEREZ had provided to Co-conspirator #2.

Overt Act No. 22:   On or about August 26, 2016, Co-conspirator #4 agreed to drive from Florida to defendant JOSE PEREZ's house in Missouri to assist with the sale of turtles to third parties.

Overt Act No. 23:   On or about August 27, 2016, following defendant JOSE PEREZ's instructions, Co-conspirator #4 retrieved the turtles from defendant JOSE PEREZ's house in Missouri and transported the turtles to Florida so that Co-conspirator #4 could ship the turtles to defendant JOSE PEREZ's customers and send the proceeds to defendant STEPHANY PEREZ's PayPal account on defendant JOSE PEREZ's behalf.

Overt Act No. 24:   On or about August 29, 2016, during a telephone conversation, defendant JOSE PEREZ instructed his wife to ship three *Terrapene nelsoni* (spotted box turtles) to a buyer in Spain, which she shipped later that day.

Overt Act No. 25:   On or about November 15, 2016, during a telephone conversation, defendant JOSE PEREZ informed defendant STEPHANY PEREZ to expect a $3,000 payment from Co-conspirator #4 for the animals that Co-conspirator #4 sold on behalf of defendant JOSE PEREZ.

Overt Act No. 26:   On or about February 24, 2017, during a telephone conversation, defendant JOSE PEREZ advised defendant STEPHANY PEREZ to read *Stolen World*, a book about the business of smuggling snakes, to educate her on how to smuggle animals and make money from doing so.

Overt Act No. 27:   On or about July 6, 2017, during a telephone conversation, defendants JOSE PEREZ and STEPHANY PEREZ discussed $4,000 that defendant STEPHANY PEREZ received in her PayPal account from Co-conspirator #4 for animals Co-conspirator #4 sold on behalf of defendant JOSE PEREZ, and defendant JOSE PEREZ's belief that Co-conspirator #4 owed them substantially more money for those animals.

Overt Act No. 28:   On or about August 8, 2017, acting upon instruction from defendant JOSE PEREZ, defendant STEPHANY PEREZ directed Co-conspirator #4 to ship the unsold animals (from those Co-conspirator #4 had retrieved from defendant JOSE PEREZ's house in Missouri on or about August 27, 2016) to defendant JOSE PEREZ's mother's house in Oxnard, California.

Overt Act No. 29:   On or about April 26, 2018, Co-conspirator #2 smuggled Yucatan box turtles into the United States from Mexico.

Overt Act No. 30:   On or about April 27, 2018, defendant JOSE PEREZ caused Co-conspirator #2 to ship the smuggled Yucatan box turtles from El Paso, Texas to defendant JOSE PEREZ's mother in Oxnard, California.

Overt Act No. 31:   On or about and between May 2, 2018, and May 9, 2018, defendant JOSE PEREZ imported approximately 30 turtles of various species from Hong Kong to Oxnard, California, without making the required declaration, and without the required import papers.

Overt Act No. 32:   On or about May 17, 2018, defendant JOSE PEREZ electronically messaged a cooperating private individual ("CPI") an offer to sell turtles and "*abronia*" (lizards) for a total of $2,100 and instructed the CPI to send the money for the animals to defendant STEPHANY PEREZ's PayPal account.

Overt Act No. 33:   On or about May 19, 2018, defendant JOSE PEREZ caused a payment of $2,100 to be sent from the CPI to defendant STEPHANY PEREZ's PayPal account.

Overt Act No. 34:   On or about May 22, 2018, Co-conspirator #2 smuggled Yucatan box turtles into the United States from Mexico.

Overt Act No. 35:   On or about May 22, 2018, defendant JOSE PEREZ caused Co-conspirator #2 to ship the smuggled Yucatan box turtles from El Paso, Texas to defendant JOSE PEREZ's mother in Oxnard, California.

Overt Act No. 36:   On or about May 23, 2018, defendant JOSE PEREZ caused the turtles and lizards he sold to the CPI to be shipped from Oxnard, California to the CPI in Iowa.

Overt Act No. 37:   On or about May 24, 2018, defendant JOSE PEREZ sent the CPI an image of a FedEx shipping label, indicating that he had shipped the animals.

Overt Act No. 38:   On or about May 25, 2018, responding to an electronic message from the CPI stating that all of the turtles had died, defendant JOSE PEREZ stated "Really f*** man that sucks they all died?  No they were doing good when I had them.  I can't believe they all just died in 1 shot."

Overt Act No. 39:   On or about September 26, 2018, Co-conspirator #2 smuggled Yucatan box turtles and crocodiles into the United States from Mexico.

Overt Act No. 40:   On or about September 27, 2018, defendant JOSE PEREZ caused Co-conspirator #2 to ship the smuggled Yucatan box turtles and crocodiles from El Paso, Texas to defendant STEPHANY PEREZ in Oxnard, California.

Overt Act No. 41:   On or about October 7, 2018, Co-conspirator #2 smuggled spotted box turtles into the United States from Mexico.

Overt Act No. 42:   On or about October 8, 2018, defendant JOSE PEREZ caused Co-conspirator #2 to ship the smuggled spotted box turtles from El Paso, Texas to defendant STEPHANY PEREZ in Oxnard, California.

Overt Act No. 43:   On or about and between October 15, 2018, and October 18, 2018, Co-conspirators #1 and #2 electronically messaged each other about how much Co-conspirator #2 would charge to cross three *heloderma* (lizards) and three *Mexicana* (turtles) for defendant JOSE PEREZ, and they agreed on a price of $350 for the crossing of the animals from Mexico into the United States.

Overt Act No. 44:   On or about October 17, 2018, Co-conspirator #1 electronically messaged Co-conspirator #2 and informed Co-conspirator #2 that he had sent animals to Co-conspirator #2 on behalf of defendant JOSE PEREZ.

Overt Act No. 45:   On or about October 17, 2018, defendant JOSE PEREZ electronically messaged Co-conspirator #2 to confirm that Co-conspirator #1 had sent to Co-conspirator #2 the lizards and turtles that defendant JOSE PEREZ had purchased.

Overt Act No. 46:   On or about October 18, 2018, Co-conspirator #2 electronically messaged defendant JOSE PEREZ and informed defendant JOSE PEREZ that Co-conspirator #2 was unable to cross the animals that defendant JOSE PEREZ had purchased.

16

Overt Act No. 47:   On or about October 19, 2018, Co-conspirator #2 told Co-conspirator #1 that he was not able to cross the animals because there were six turtles and he was expecting only three turtles and three lizards, and that the crossing would now cost $400.

Overt Act No. 48:   On or about October 19, 2018, defendant JOSE PEREZ electronically messaged Co-conspirator #2 and instructed him to ship the animals on Monday.

Overt Act No. 49:   On or about October 19, 2018, Co-conspirator #2 responded to defendant JOSE PEREZ, writing that he [Co-conspirator #2] could not guarantee the safety of the animals.

Overt Act No. 50:   On or about October 19, 2018, defendant JOSE PEREZ responded to Co-conspirator #2, writing that Co-conspirator #2 should ship the animals for Saturday delivery.

Overt Act No. 51:   On or about October 19, 2018, defendant JOSE PEREZ electronically messaged Co-conspirator #2, writing that he [defendant JOSE PEREZ] had sent the shipping label for Saturday delivery.

Overt Act No. 52:   On or about and between October 19, 2018, and October 20, 2018, Co-conspirator #2 smuggled spotted box turtles into the United States from Mexico.

Overt Act No. 53:   On or about and between October 19, 2018, and October 20, 2018, defendant JOSE PEREZ caused Co-conspirator #2 to ship the smuggled box turtles from El Paso, Texas to defendant STEPHANY PEREZ in Oxnard, California.

Overt Act No. 54:   On or about October 20, 2018, defendant JOSE PEREZ electronically messaged Co-conspirator #2 and informed him that he [defendant JOSE PEREZ] would notify Co-conspirator #2 when the animals arrived.

17

Overt Act No. 55:   On or about October 20, 2018, Co-conspirator #2 electronically messaged defendant JOSE PEREZ and Co-conspirators #1 and #3, instructing defendant JOSE PEREZ not to post photos of animals on social media, because an investigator had gone into the shipping location used by Co-conspirator #2 to ask questions about Co-conspirator #2 shipping animals.

Overt Act No. 56:   On or about October 25, 2018, Co-conspirator #2 smuggled Mexican beaded lizards into the United States from Mexico.

Overt Act No. 57:   On or about October 25, 2018, defendant JOSE PEREZ caused Co-conspirator #2 to ship the smuggled Mexican beaded lizards from El Paso, Texas to defendant STEPHANY PEREZ in Oxnard, California.

Overt Act No. 58:   On or about November 1, 2018, Co-conspirator #2 smuggled Mexican box turtles into the United States from Mexico.

Overt Act No. 59:   On or about November 1, 2018, defendant JOSE PEREZ caused Co-conspirator #2 to ship the smuggled Mexican box turtles from El Paso, Texas to defendant STEPHANY PEREZ in Oxnard, California.

Overt Act No. 60:   Between on or about November 8, 2018, and November 30, 2018, during a telephone call, defendant JOSE PEREZ informed defendant STEPHANY PEREZ about a potential purchase of *aerolatas* (turtles) from Co-conspirator #1.

Overt Act No. 61:   Between on or about November 8, 2018, and November 30, 2018, during a telephone call, defendant JOSE PEREZ told defendant STEPHANY PEREZ, "The business is running smooth.  I can run the business from in here."

Overt Act No. 62:   Between on or about November 8, 2018, and November 30, 2018, during a telephone call, defendant JOSE PEREZ dictated to defendant STEPHANY PEREZ a text message that he wanted her to send to an associate regarding the purchase of turtles for $100 each.

Overt Act No. 63:   Between on or about November 8, 2018, and November 30, 2018, during a telephone call, defendant JOSE PEREZ instructed defendant STEPHANY PEREZ how to carry out a sale of turtles to an associate for $3,000, which would be sent to defendant STEPHANY PEREZ.

Overt Act No. 64:   Between on or about November 8, 2018, and November 30, 2018, during a telephone call, defendant JOSE PEREZ discussed purchasing turtles with defendant STEPHANY PEREZ, and how they were not able to send spotted box turtles to certain states and that defendant STEPHANY PEREZ should request payment for the turtles via Western Union.

Overt Act No. 65:   Between on or about November 8, 2018, and November 30, 2018, during a telephone call, defendant JOSE PEREZ instructed another one of his sisters how to create shipping labels for a shipment of turtles, and stated that their mother would pack the turtles.

Overt Act No. 66:   Between on or about November 8, 2018, and November 30, 2018, during a telephone call, defendant JOSE PEREZ directed defendant STEPHANY PEREZ to print out photographs of lizards for defendant JOSE PEREZ to verify what was in the shipment from Co-conspirator #1.

Overt Act No. 67:   Between on or about November 8, 2018, and November 30, 2018, during a telephone call, defendant JOSE PEREZ

instructed Co-conspirator #5 how it was very important for a shipment of turtles to be sent immediately to a buyer in Spain, and how to package the turtles.

Overt Act No. 68:   Between on or about November 8, 2018, and November 30, 2018, during a telephone call, defendants JOSE PEREZ and STEPHANY PEREZ discussed a number of topics regarding the sale and shipment of turtles, including the death of turtles during shipping, instructions for defendant STEPHANY PEREZ to advertise the sale of baby turtles, and directions that she put some of the turtles in a pillowcase to ship to Co-conspirator #1 and use the alias "Julio Rodriguez" as the return address.

Overt Act No. 69:   Between on or about November 8, 2018, and November 30, 2018, during a telephone call, defendant JOSE PEREZ instructed defendant STEPHANY PEREZ how to export a shipment of turtles to a purchaser in Spain.

Overt Act No. 70:   Between on or about November 8, 2018, and November 30, 2018, during a telephone call, defendant JOSE PEREZ discussed with one of his sisters their mother's concern about the suspicious nature of a shipment of turtles they were sending to a customer, and whether the sister should tell their mother that the shipment was "legal."

Overt Act No. 71:   On or about November 20, 2018, Co-conspirator #2 smuggled Yucatan box turtles and common box turtles into the United States from Mexico.

Overt Act No. 72:   On or about November 20, 2018, defendant JOSE PEREZ caused Co-conspirator #2 to ship the smuggled Yucatan box turtles and common box turtles from El Paso, Texas to defendant STEPHANY PEREZ in Oxnard, California.

Overt Act No. 73:   On or about December 4, 2018, Co-conspirator #2 smuggled Mexican beaded lizards into the United States from Mexico.

Overt Act No. 74:   On or about December 5, 2018, defendant JOSE PEREZ caused Co-conspirator #2 to ship the smuggled Mexican beaded lizards from El Paso, Texas to defendant STEPHANY PEREZ in Oxnard, California.

Overt Act No. 75:   Between on or about December 1, 2018, and December 16, 2018, during a telephone call, defendant JOSE PEREZ asked defendant STEPHANY PEREZ whether a shipment of turtles she received from Co-conspirator #1 looked "big and healthy," and said that he owed Co-conspirator #1 approximately $7,000.

Overt Act No. 76:   Between on or about December 1, 2018, and December 16, 2018, during a telephone call, defendant JOSE PEREZ instructed defendant STEPHANY PEREZ to make an audio recording of him in which he told a customer that he was "in rehab" and had lizards, which he had just smuggled from Mexico, at his house if the customer was interested.

Overt Act No. 77:   Between on or about December 1, 2018, and December 16, 2018, during a telephone call, defendant STEPHANY PEREZ informed defendant JOSE PEREZ that a customer was interested in purchasing lizards for $16,000, and that she attempted to take a video of the lizards to send to the customer before realizing that she had lost one of the lizards in her house.

Overt Act No. 78:   Between on or about December 1, 2018, and December 16, 2018, during a telephone call, defendant JOSE PEREZ instructed defendant STEPHANY PEREZ to take and send photographs of

baby turtles to a customer, and to tell the customer that the turtles were $400 each, which defendant JOSE PEREZ said was a cheap price.

Overt Act No. 79:   Between on or about December 1, 2018, and December 16, 2018, during a telephone call, defendant STEPHANY PEREZ relayed a message from Co-conspirator #1 to defendant JOSE PEREZ, in which Co-conspirator #1 asked defendant JOSE PEREZ if he wanted to buy turtles.

Overt Act No. 80:   Between on or about December 1, 2018, and December 16, 2018, during a telephone call, defendant JOSE PEREZ directed defendant STEPHANY PEREZ to ask Co-conspirator #1 about the status of "los negros" (black bearded lizards).

Overt Act No. 81:   Between on or about December 1, 2018, and December 16, 2018, Co-conspirators #1, #2, and #3 electronically messaged each other regarding how defendant STEPHANY PEREZ would not answer her phone, and that defendant STEPHANY PEREZ had to confer with defendant JOSE PEREZ before she would make shipping labels for them.

Overt Act No. 82:   On or about July 7, 2020, defendant JOSE PEREZ sold and caused to be shipped Mexican box turtles from California to a customer in Georgia.

Overt Act No. 83:   On or about July 9, 2020, defendant JOSE PEREZ caused the customer in Georgia to send him $2,400 via PayPal as payment for the Mexican box turtles.

Overt Act No. 84:   On or about September 22, 2020, defendant JOSE PEREZ sold and caused to be shipped *Abronia lythrochila* lizards to a customer in Colorado.

Overt Act No. 85:   On or about September 15, 2020, and September 23, 2020, defendant JOSE PEREZ caused the customer in

Colorado to send him $1,200 and $1,000, respectively, via PayPal as payment for the *Abronia lythrochila* lizards.

Overt Act No. 86:   On or about October 30, 2020, defendant JOSE PEREZ caused Co-conspirator #5 to receive $1,060 via Venmo with the notation "X1 Female calico abronia X1 Male red calico abronia."

Overt Act No. 87:   On or about January 16, 2021, in a series of social media posts, after a potential buyer accused defendant JOSE PEREZ of offering wild-caught reptiles from Mexico for sale, defendant JOSE PEREZ responded that the animals were being saved from deforestation in Mexico so the animals were doomed anyway and should be enjoyed by defendant JOSE PEREZ's customers.

Overt Act No. 88:   On or about February 1, 2021, while defendant JOSE PEREZ was in Mexico, he posted on social media photographs of various species of turtles, which appeared to have been taken from the wild.

Overt Act No. 89:   On or about February 3, 2021, defendant JOSE PEREZ posted on social media that he was on a trip to the Yucatan, Campeche, and Cancun, Mexico, and wrote that he had not been "able to get my hands on any Yucatan spiny tails or Campeche spiny tail iguanas (too fast), but I was able to get a better idea on how to keep them" and posted photographs of an individual holding lizards in front of pages from the book *Amphibians and Reptiles of Northern Guatemala, the Yucatan, and Belize* that identified the species.

Overt Act No. 90:   On or about March 3, 2021, while in Mexico with Co-conspirator #5, defendant JOSE PEREZ advertised on social media that he was "stoked" because he "was able to snatch up a group of these Nicaraguan Mesaspis Moreletii or Abronia [lizards]. Even if

I don't agree with it it's cool to add another Abronia to the list I'm working with making it number 16!"

Overt Act No. 91:   On or about May 7, 2021, defendant JOSE PEREZ posted on a social media forum devoted to *Abronia* lizards that critics of reptile smugglers "have no business keeping *Abronia* when you have something [negative] to say about smuggled animals.  Doesn't matter if yours were born in captivity. The parents more than likely were smuggled isn't that pretty much the same. If it wasn't for the guys that smuggled bearded dragons we wouldn't have all these morphs and endless supply of bearded dragons."

Overt Act No. 92:   On or about June 15, 2021, defendant JOSE PEREZ sent a message via Facebook Messenger to the CPI, offering to sell two lizards (*Abronia fimbriata*) for $2,500.

Overt Act No. 93:   On or about June 18, 2021, defendant JOSE PEREZ messaged the CPI and provided payment instructions for the purchase of the lizards, specifically, the Venmo address for Co-conspirator #5.

Overt Act No. 94:   On or about June 22, 2021, defendant JOSE PEREZ caused the shipment of two lizards (*Abronia fimbriata*) to the CPI in Iowa.

Overt Act No. 95:   On or about June 26, 2021, defendant JOSE PEREZ caused Co-conspirator #5 to receive $2,390 via Venmo with the notation "Payment in full (10.00 sent earlier) for 2.2 or 1.3 proven breeding group of 4 P. b. Belli and 2 B. yucatana, guaranteed live and healthy delivery to me in Albuquerque, N.M. to be sent this Monday, 06/28/21 via FedEx priority next morning delivery."

COUNTS TWO THROUGH TEN

[18 U.S.C. §§ 545, 2]

[DEFENDANT JOSE PEREZ]

On or about the dates listed below, in Ventura County, within the Central District of California, and elsewhere, defendant JOSE PEREZ fraudulently and knowingly imported and brought into the United States, and willfully caused to be imported and brought into the United States, merchandise, and aided and abetted the importation and bringing into the United States of merchandise, specifically the wildlife listed below, contrary to law, and received, concealed, bought, sold, and facilitated the transportation, concealment, and sale of such merchandise after importation, and willfully caused and aided and abetted the same, knowing the merchandise to have been imported and brought into the United States contrary to law, by, among other things, knowingly failing to make the required declaration, failing to obtain the required authorization to import such merchandise, and failing to transport such merchandise through designated ports of entry into the United States, in violation of Title 16, United States Code, Sections 1538(c)(1), 1538(e), and 1540(b), and Title 50, Code of Federal Regulations, Sections 14.11, 14.52, and 14.61.

| COUNT | DATES | WILDLIFE |
|-------|-------|----------|
| TWO | April 26, 2018 | Yucatan box turtles (*Terrapene carolina yucatana*) |

| COUNT | DATES | WILDLIFE |
|-------|-------|----------|
| THREE | May 2, 2018, to May 9, 2018 | Fly River turtles (*Carettochelys insculpta*), Four-eyed turtles (*Sacalia quadriocellata*), Reeves turtles (*Mauremys reevesii*), Black Breasted Hill Turtles (*Geoemyda spengleri*), Big Headed turtles (*Platysternon megacephalum*) |
| FOUR | May 22, 2018 | Yucatan box turtles (*Terrapene carolina yucatana*) |
| FIVE | September 26, 2018, to September 27, 2018 | Crocodiles (*Crocodylidae sp.*) and Yucatan box turtles (*Terrapene carolina yucatana*) |
| SIX | October 7, 2018, to October 8, 2018 | Spotted box turtles (*Terrapene nelsoni*) |
| SEVEN | October 25, 2018 | Mexican beaded lizards (*Heloderma horridum*) |
| EIGHT | November 1, 2018 | Mexican box turtles (*Terrapene carolina Mexicana*) |
| NINE | November 20, 2018 | Yucatan box turtles (*Terrapene carolina yucatana*) |
| TEN | December 4, 2018, to December 5, 2018 | Mexican beaded lizards (*Heloderma horridum*) |

COUNTS ELEVEN AND TWELVE

[16 U.S.C. §§ 3372(a)(1) and 3373(d)(1)(B)]

[DEFENDANT JOSE PEREZ]

On or about the dates listed below, in Ventura County, within the Central District of California, and elsewhere, defendant JOSE PEREZ knowingly engaged in conduct that involved the sale and purchase of, the offer of sale and purchase of, and the intent to sell and purchase wildlife with a market value in excess of $350, and knowingly imported, transported, sold, received, acquired, and purchased wildlife, specifically the wildlife listed below, knowing that such wildlife was transported, that is imported, in violation of the laws, treaties, and regulations of the United States, including Title 16, United States Code, Sections 1538(c)(1), 1538(e), and 1540(b), and Title 50, Code of Federal Regulations, Sections 14.11, 14.52, and 14.61.

| COUNT | DATE | WILDLIFE |
|-------|------|----------|
| ELEVEN | May 24, 2018 | Four-eyed turtles (*Sacalia quadriocellata*) |
| TWELVE | June 22, 2021 | Lizards (*Abronia fimbriata*) |

1          FORFEITURE ALLEGATION ONE

2       [18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

3       1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal

4  Procedure, notice is hereby given that the United States of America

5  will seek forfeiture as part of any sentence, pursuant to Title 18,

6  United States Code, Section 981(a)(1)(C) and Title 28, United States

7  Code, Section 2461(c), in the event of any defendant's conviction of

8  the offense set forth in Count One of this Indictment.

9       2.    Any defendant so convicted shall forfeit to the United

10 States of America the following:

11           (a)   All right, title, and interest in any and all

12 property, real or personal, constituting, or derived from, any

13 proceeds traceable to the offense; and

14           (b)   To the extent such property is not available for

15 forfeiture, a sum of money equal to the total value of the property

16 described in subparagraph (a).

17      3.    Pursuant to Title 21, United States Code, Section 853(p),

18 as incorporated by Title 28, United States Code, Section 2461(c), any

19 defendant so convicted shall forfeit substitute property, up to the

20 value of the property described in the preceding paragraph if, as the

21 result of any act or omission of said defendant, the property

22 described in the preceding paragraph or any portion thereof (a)

23 cannot be located upon the exercise of due diligence; (b) has been

24 transferred, sold to, or deposited with a third party; (c) has been

25 placed beyond the jurisdiction of the court; (d) has been

26 substantially diminished in value; or (e) has been commingled with

27 other property that cannot be divided without difficulty.

28

1

FORFEITURE ALLEGATION TWO

2

[18 U.S.C. §§ 982 and 545]

3   1.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal

4   Procedure, notice is hereby given that the United States of America

5   will seek forfeiture as part of any sentence, pursuant to Title 18,

6   United States Code, Sections 982 and 545, and Title 28, United States

7   Code, Section 2461(c), in the event of the defendant's conviction of

8   the offenses set forth in any of Counts Two through Ten of this

9   Indictment.

10   2.   The defendant, if so convicted, shall forfeit to the United

11   States the following:

12   (a) All right, title, and interest in any and all property,

13   real or personal constituting, or derived from, any proceeds

14   obtained, directly or indirectly, as a result of each such offense;

15   (b)  Any and all merchandise introduced into the United

16   States in violation of Title 18, United States Code, Section 545, or

17   the value thereof; and

18   (c)  To the extent such property is not available for

19   forfeiture, a sum of money equal to the total value of the property

20   described in subparagraphs (a) and (b).

21   3.   Pursuant to Title 21, United States Code, Section 853(p),

22   as incorporated by Title 18, United States Code, Section 982(b) and

23   Title 28, United States Code, Section 2461(c), the defendant, if so

24   convicted, shall forfeit substitute property, up to the total value

25   of the property described in the preceding paragraph if, as the

26   result of any act or omission of the defendant, the property

27   described in the preceding paragraph, or any portion thereof: (a)

28   cannot be located upon the exercise of due diligence; (b) has been

transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION THREE

[16 U.S.C. § 3374 and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 16, United States Code, Section 3374 and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offenses set forth in either of Counts Eleven or Twelve of this Indictment.

2.    The defendant, if so convicted, shall forfeit to the United States the following:

(a) All fish or wildlife or plants imported, exported, transported, sold, received, acquired, or purchased contrary to the provisions of Title 18, Section 3372 or any regulation issued pursuant thereto;

(b) All vessels, vehicles, aircraft, and other equipment used to aid in any such offense; and

(c) To the extent that such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in

1 value; or (e) has been commingled with other property that cannot be

2 divided without difficulty.

3                                           A TRUE BILL

4

5                                           _____/S/_____

6                                           Foreperson

7

8 TRACY L. WILKISON                          TODD KIM
   United States Attorney                    Assistant Attorney General

9                                            Environment and Natural Resources
                                             Division
10
                                             GARY N. DONNER
11                                           Trial Attorney
   SCOTT M. GARRINGER                        Environmental Crimes Section
12 Assistant United States Attorney
   Chief, Criminal Division
13
   MARK A. WILLIAMS
14 Assistant United States Attorney
   Chief, Environmental and
15 Community Safety Crimes Section

16 MATTHEW O'BRIEN
   BRIAN FAERSTEIN
17 Assistant United States Attorneys
   Environmental and Community
18 Safety Crimes Section

19

20

21

22

23

24

25

26

27

28